NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
BRENT A. WHITTLESEY (Cal. Bar No. 73493)
Assistant United States Attorney
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5421
     Facsimile: (213) 894-0142
     E-mail: Brent.Whittlesey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>$51,704.00 IN U.S. CURRENCY,<br><br>            Defendant. | No. 2:20-CV-08866<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>21 U.S.C. § 881(a)(6)<br><br>[DEA] |

Plaintiff United States of America brings this claim against defendant $51,704.00 in U.S. Currency, and alleges as follows:

### JURISDICTION AND VENUE

1.  This is an <u>in rem</u> civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6).

2.  This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $51,704.00 in U.S. Currency (the "defendant currency") seized by law enforcement officers from Josue Batista ("Batista") on November 19, 2019, at the Los Angeles International Airport, One World Way, Los Angeles, California 90045.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Batista may be adversely affected by these proceedings.

FACTS SUPPORTING FORFEITURE

8. On November 19, 2019, Drug Enforcement Administration ("DEA") Los Angeles International Airport ("LAX") Group 3[1] officers received information that Batista was traveling on American Airlines flight number 148 from Orlando, Florida[2] to Los Angeles, California.

9. Upon arrival in Los Angeles, officers initiated a consensual encounter with Batista in the baggage claim area to further investigate the purpose of Batista's travel.

///

---

[1] DEA Group 3 is a task force comprised of DEA special agents, Los Angeles County Sheriff Department deputies and detectives, Los Angeles Police Department officers and Los Angeles Airport officers (collectively referred to herein as "officers").

[2] Orlando, Florida is a known consumer city for narcotics and Los Angeles is a known source city where narcotics can be purchased.

Initial Encounter of Batista

10. After Batista claimed a piece of luggage at the baggage claim area, officers approached Batista and advised Batista that he was not under arrest, but that the officers wished to ask Batista some security questions about Batista's travel from Orlando to Los Angeles. Batista agreed to answer questions. Officers asked to see Batista's identification, and noticed that Batista's hands trembled as Batista handed the identification document to officers.

11. Officers asked Batista the purpose of his travel. Batista told officers that he lived in Orlando and worked as a real estate agent, and that he traveled to Los Angeles to purchase some property and to visit family members and friends. When officers asked Batista to identify the friends, Batista refused to identify them.

12. Officers asked Batista whether he was carrying anything illegal like drugs or any currency. Batista stated that he was not carrying any drugs and had about $40,000 in the suitcase. Batista consented to a search of the suitcase. When an officer opened the suitcase the officer saw stacks of currency wrapped in articles of clothing, and closed the bag. Officers asked for permission to search Batista's backpack, and Batista consented to the search. When an officer looked inside the backpack, the officer found additional stacks of currency, closed the backpack, and gave it back to Batista. Officers asked Batista how much money was in the backpack, and Batista responded that there was about $8,000.

Office Interview of Batista

13. Batista agreed to accompany the officers to the DEA airport office. Batista personally transported the luggage. While walking to the DEA office, officers asked Batista what arrangements, if any,

3

Batista had made for a place to stay while in Los Angeles, and Batista stated that no arrangements had been made. Officers also asked Batista whether Batista was going to stay with his family or friends, and Batista refused to answer. However, changing the prior story about the reason for the travel to Los Angeles, Batista volunteered that he had a friend who "flipped" automobiles, and stated that Batista planned to purchase a couple of cars. However, Batista refused to tell officers the friend's name. Narcotics currency couriers often provide evasive and contradictory explanations for the possession of large amounts of currency.

14. During the search of Batista's suitcase, officers discovered several bundles of U.S. Currency hidden inside clothing. The bundles were incrementally wrapped with a rubber band and appeared to be equivalent in quantity and denomination. It is common for transporters of illegal narcotics to conceal rubber-banded bundles of currency in articles of clothing.

15. Officers asked Batista how he came in contact with such a large amount of currency. Batista stated that he made the money working in the real estate business. Batista further stated that he had withdrawn the money from a bank a day earlier, but refused to identify the bank, stating that he was unwilling to discuss anything about personal finances.

16. Officers placed the currency in a DEA evidence bag and called for a narcotics detection canine to come to the office. Officer D. Suviate brought her trained narcotics detection canine, Smithy, to the DEA office to conduct the sniff test. The narcotics detection canine alerted to the odor of narcotics emanating from the

currency, indicating that the currency had recently been in the presence of narcotics.

17. The defendant $51,704.00 in U.S. currency was in denominations consistent with drug trafficking and consisted of 4 one dollar bills, 2 five dollar bills, 27 ten dollar bills, 1,401 twenty dollar bills, 44 fifty dollar bills, and 212 one hundred dollar bills.

18. As noted above, a trained, state-certified narcotic detection canine named Smithy conducted a sniff test of the currency in Batista's possession. Smithy was first certified as a narcotics detection canine on January 14, 2013, and was placed into service on January 15, 2013. Smithy alerts to the odor of marijuana, cocaine, heroin, and methamphetamine. On September 23, 2019, the Los Angeles Police Department and the California Narcotics Canine Associate recertified Smithy and Officer Suviate as a narcotics detection team. Smithy has received over 815 hours of training in order to ensure that Smithy does not alert to currency itself but instead to the presence of controlled substances on the currency. Smithy has been used successfully in over 792 cases in which controlled substances have been found. Smithy is responsible for the seizure of over 65 pounds of cocaine, 26 pounds of heroin, 756 pounds of marijuana and 213 pounds of methamphetamine.

19. During a prior unrelated investigation in April 2015, officers seized a mail parcel in Orlando, Florida that contained $55,000 in currency. Batista's fingerprints were on the parcel.

CLAIM FOR RELIEF

20. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic

1  trafficking or was intended to be used in one or more exchanges for a
2  controlled substance or listed chemical, in violation of 21 U.S.C.
3  § 841 et seq.  The defendant currency is therefore subject to
4  forfeiture pursuant to 21 U.S.C. § 881(a)(6).
5      WHEREFORE, plaintiff United States of America prays:
6      (a)  that due process issue to enforce the forfeiture of the
7  defendant currency;
8      (b)  that due notice be given to all interested parties to
9  appear and show cause why forfeiture should not be decreed;
10     (c)  that this Court decree forfeiture of the defendant currency
11 to the United States of America for disposition according to law; and
12     (d)  for such other and further relief as this Court may deem
13 just and proper, together with the costs and disbursements of this
14 action.

DATED: September 28, 2020

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Division

   /s/ *Brent A. Whittlesey*
BRENT A. WHITTLESEY
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**VERIFICATION**

I, Eric Hakala, hereby declare that:

1. I am a Task Force Officer with the U.S. Drug Enforcement Administration.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2020 in Los Angeles, California.

ERIC HAKALA
Task Force Officer
U.S. Drug Enforcement Administration

Scanned with CamScanner